UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
MAURICE OPARAJI,

                        Plaintiff,                                **REPORT AND RECOMMENDATION**
                                                                  **21 CV 2758 (ENV)(LB)**

        -against-

HOME RETENTION CORP.,
BORCHERT AND LASPINA, P.C.,
ROBERT W. FROMMER, AKERMAN LLP,
and JORDAN M. SMITH,

                        Defendants.
-------------------------------------------------------X
**BLOOM, United States Magistrate Judge:**

        *Pro se* plaintiff Maurice Oparaji brings this action against defendants alleging violations

of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 et. seq., violations of the

New York Telephone Consumer Protection Act ("New York TCPA")[1], conspiracy, intentional

misrepresentation, negligent misrepresentation, and willful misconduct. Compl., ECF No. 1.

Plaintiff also seeks an injunction barring defendants from further violations of the TCPA. Id.

Defendants Borchert and Laspina, PC, Robert W. Frommer, (collectively the "Borchert

defendants") Akerman LLP, and Jordan Smith (collectively the "Akerman defendants") now move

to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). ECF

Nos. 12, 20. Defendant Home Retention Corp., despite proper service of the summons and

complaint, has failed to plead or otherwise defend this action. Plaintiff now moves for a default

judgment against defendant Home Retention Corp. pursuant to Federal Rule of Civil Procedure

Rule 55(b)(2). ECF No. 34. The Honorable Eric N. Vitaliano referred these matters to me for a

---

[1] New York does not have a Telephone Consumer Protection Act. New York's General Business Law § 399 is the
closest state law analogue. See McCabe v. Caribbean Cruise Line, Inc., No. 13-CV-6131(JG), 2014 WL 3014874, at
*3 (E.D.N.Y. July 3, 2014) (discussing both the TCPA and New York's Gen. Bus. Law § 399).

Report and Recommendation in accordance with 28 U.S.C. § 636(b). For the reasons set forth below, it is respectfully recommended that the Borchert and Akerman defendants' motions to dismiss should be granted and plaintiff's motion for a default judgment should be granted in part and denied in part. The Court should not exercise supplemental jurisdiction over plaintiff's non-General Business Law state law claims and said claims should be dismissed without prejudice.

## BACKGROUND

This case is the latest lawsuit missile launched by plaintiff at his mortgage lender and its counsel. Here, plaintiff alleges federal and state telemarketing claims and an assortment of state law claims related to a state court foreclosure action. Compl. ¶¶ 12-28, 30-70.

**I. Alleged Unwanted Telephone Calls and TCPA Violations**

The sole federal claim, defendants' alleged violation of the TCPA, 47 U.S.C. § 227 et. seq., arises out of a series of phone calls in December 2020 and April 2021. Compl. ¶¶ 13, 16. Plaintiff alleges that a representative from defendant Home Retention Corp. called him on approximately December 1, 2020 and "told him that Robert W. Frommer directed him to call him." Id. ¶ 13. The representative inquired about the sale of plaintiff's property at 245-11 133 Road, Rosedale, New York and offered cash to purchase the property. Id. Plaintiff stated that he was not interested in a sale, but the calls continued. Id. ¶¶ 13-14. On approximately April 21, 2021, plaintiff alleges a secretary with defendant Home Retention Corp. called plaintiff and told him that defendant "Jordan Smith informed her that plaintiff is seeking to refinance his existing loan." Id. ¶ 16. The filings in this case demonstrate that defendant Frommer is a lawyer with Borchert & LaSpina, P.C. and defendant Smith is a lawyer with Akerman LLP. Id. ¶ 30. Plaintiff never told either defendant Frommer or defendant Smith that he was looking to sell his property

or refinance his loan. Id. ¶¶ 13, 16. Further, plaintiff's telephone number is a "residential telephone number" which is listed on the "Do Not Call Registry." Id. ¶¶ 18-21. Although plaintiff never consented to receive calls from defendant Home Retention Corp., he alleges that this defendant's representatives called him approximately 20 times and inquired about the sale of his property or the refinancing of his loan.[2] Id. ¶¶ 22-25. Plaintiff claims these calls, which were part of a conspiracy involving defendants, all violated the TCPA. Id. ¶ 28.

## II. State Court Foreclosure Proceedings

Although the complaint is at times rambling and incomprehensible, it is clear that plaintiff's claims arise out of several state court foreclosure proceedings against him and the property in Rosedale, New York.[3] Compl. ¶¶ 30-45; Borchert Defs.' Mem. of Law 5, ECF No. 12; Akerman Defs.' Mem of Law 1-5, ECF No. 20-34. As set forth in defendants' papers, plaintiff and his wife, Ada Oparaji, defaulted on a mortgage in 2007 and the mortgagor commenced a foreclosure action against them in Queens County Supreme Court. Goldman Decl. ¶ 2, ECF No. 20-1; Akerman Defs.' Mem of Law 1.[4] The foreclosure action settled, and plaintiff and his wife (the "Oparajis") agreed to reimburse the mortgagor, CitiMortgage,[5] for property taxes paid on their behalf. Goldman Decl. ¶ 2. CitiMortgage sent a demand for reimbursement to the Oparajis when they failed to pay as required. Id. The Oparajis sued CitiMortgage on April 8, 2011 in Queens County Civil Court, claiming breach of the 2007 foreclosure action settlement.

---

[2] Plaintiff appended phone records to his complaint which purportedly document the unwanted calls. Compl., ECF No. 1, at 93-11. However, these records only span the period from December 1, 2020 through February 28, 2021. Id. Moreover, as noted by defendants, plaintiff's opposition contradicts the complaint and ups the ante; plaintiff states he received 51 calls instead of 20. Pl.'s Opp'n. Mem. of Law 17.

[3] Plaintiff copied and pasted portions of filings from prior state court matters into the body of the instant complaint. See e.g., Compl. ¶¶ 45, 71. Defendants recount the background of the state court proceedings.

[4] Although this is a motion to dismiss, the Court takes judicial notice of the state court records and proceedings as it is permitted to do. See Glob. Network Comm'n, Inc. v. City of New York, 458 F.3d 150, 157 (2d Cir. 2006) (quoting Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc., 146 F.3d 66, 70 (2d Cir. 1998) (discussing a Court's power to take judicial notice of filings in other courts).

[5] CitiMortgage is the successor-by-merger of the original mortgagor, ABN Amro Mortgage Group. Goldman Decl. ¶ 2.

Id. ¶ 3. Civil Court eventually granted summary judgment in favor of CitiMortgage and plaintiff filed a series of appeals – all of which were denied. Id. ¶¶ 4-7.

Despite the denial of plaintiff's breach of settlement claims, the litigation persisted. In 2018, plaintiff filed a state court action asserting claims similar to those in his 2011 complaint. Id. ¶ 8. That action was dismissed and Ms. Oparaji then filed a new case in this District against ABN Amro Mortgage Group, Citibank N.A., Terry Johnson, and Richard Babeck. Id. ¶¶ 8-9. Chief Judge Brodie dismissed Ms. Oparaji's case in September 2020. Id. ¶ 9, Ex. Q. See Oparaji v. ABN AMRO Mortg. Grp., Inc., No. 19-CV-1650(MKB), 2020 WL 9816011, at *1 (E.D.N.Y. Sept. 18, 2020).[6] CitiMortgage then filed a foreclosure action in March 2019 in Queens County Supreme Court against the Oparajis. Goldman Decl. ¶ 10. After the filing of counterclaims in state court, the action was removed to this District. Id. ¶¶ 12-13. CitiMortgage, Inc. v. Oparaji, No. 19-CV-2081(MKB)(RML) (E.D.N.Y. 2019). Defendant Akerman LLP, by defendant Jordan Smith, and defendant Borchert & LaSpina, P.C., by defendant Robert W. Frommer, represented CitiMortgage in that case which was ultimately remanded back to state court where it remains pending. Id. ¶¶ 14-16.

The Oparajis filed numerous submissions in state court challenging Borchert and Akerman's representation of CitiMortgage and asserting fraud. Id. ¶ 17. Plaintiff claims that the Borchert and Akerman defendants are not counsel of record in the state court matter, were never properly substituted as counsel, and may not participate in the litigation. Compl. ¶¶ 30-33. Plaintiff further alleges the Borchert and Akerman defendants continue to "misrepresent the truth of the matter" by claiming they are counsel of record. Id. ¶ 34. This conduct forms the basis of plaintiff's intentional misrepresentation, negligent misrepresentation, and willful misconduct

---

[6] The Clerk of Court is directed to send plaintiff the attached copies of all unreported cases cited herein.

claims in the instant matter. While this matter was *sub judice*, the Queens County Supreme Court denied plaintiff's request for an order invalidating the Borchert and Akerman defendants' state court filings. Akerman Defs.' Aug 5, 2021 Letter, ECF No. 27. That decision was affirmed by the Appellate Division, Second Department. CitiMortgage, Inc. v. Oparaji, No. 2021-05752, 2021 WL 5175676 (N.Y. App. Div. Nov. 8, 2021).

## PROCEDURAL HISTORY

Plaintiff commenced this action on May 14, 2021. Compl., ECF No. 1. The Borchert and Akerman defendants both move to dismiss for lack of subject matter jurisdiction and for failure to state a claim. ECF Nos. 12, 20. Despite proper service, defendant Home Retention Corp. failed to answer or respond to the complaint and the Clerk of Court noted entry of its default.[7] ECF No. 33. Plaintiff moves for a default judgment against defendant Home Retention Corp. ECF No. 34. In support of their motion to dismiss, the Borchert defendants provide: their counsel's declaration (Ryan Decl., ECF No. 12); a Memorandum of Law (Borchert Mem. of Law, ECF No. 12); a copy of the complaint filed in the instant matter (ECF No. 12-1); copies of various filings and decisions in the Oparajis' prior state court matters (ECF Nos. 12-2 through 12-19); and a Reply Memorandum of Law (Borchert Reply Mem. of Law, ECF No. 19). In support of their motion, the Akerman defendants provide: their counsel's declaration (Goldman Decl., ECF No. 20-1); various filings from previous litigation involving the Oparajis (ECF Nos. 20-2 through 20-33); a Memorandum of Law (Akerman Mem. of Law, ECF No. 20-34); and a

---

[7] Plaintiff sought entry of defendant Home Retention Corp.'s default on June 21, 2021, ECF No. 11, and July 12, 2021, ECF Nos. 17, 23. I denied plaintiff's request and referred him to New York Business Corporation Law § 306 which sets forth how to serve a corporation in New York. See ECF No. 30. Plaintiff re-served defendant Home Retention Corp. and filed an affirmation of service. ECF No. 31. The Clerk of Court noted entry of defendant Home Retention Corp.'s default. ECF No. 33.

Reply Memorandum of Law (Akerman Reply Mem. of Law, ECF No. 22-2).[8] Plaintiff opposes the motions to dismiss, providing his affirmation (Pl.'s Opp'n Aff., ECF No. 15) and a Memorandum of Law (Pl.'s Opp'n. Mem. of Law, ECF No. 16). In support of his motion for a default judgment, plaintiff provides another affirmation (Pl.'s Default Aff., ECF No. 34-1); copies of the Court's prior Orders; an affirmation of service; exhibits; and a copy of the complaint (ECF No. 34-2).[9]

## DISCUSSION

### I. Motions to Dismiss

The Borchert and Akerman defendants both move to dismiss for lack of subject matter jurisdiction and for failure to state a claim. Borchert Mem. of Law 9, 11; Akerman Mem. of Law 7, 12. The Court first considers subject matter jurisdiction. See Landau v. Eisenberg, 922 F.3d 495, 497 (2d Cir. 2019) (quoting United States v. Bond, 762 F.3d 255, 263 (2d Cir. 2014) (explaining that federal courts must assure themselves that subject matter jurisdiction exists before deciding a case)).

### A. Subject Matter Jurisdiction

### 1. Federal Question Jurisdiction

The complaint asserts that the Court has subject matter jurisdiction under both 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1332 (diversity of citizenship jurisdiction). See compl. ¶ 8. The Borchert defendants challenge the Court's subject matter jurisdiction,

---

[8] The Akerman defendants also included the Local Civil Rule 56.2 notice which requires notice to *pro se* litigants on summary judgment. ECF No. 20-36. The notice states that "the defendants in this case have moved to dismiss or for judgment on the pleadings pursuant to Rule 12(b) or 12(c)" and warns plaintiff that the Court may treat the motion as one for summary judgment under Federal Rule of Civil Procedure 56. Id.

[9] Plaintiff did not provide a Memorandum of Law in support of his motion for a default judgment as required by Local Civil Rule 7.1(a)(2) (providing that all motions shall include a "memorandum of law, setting forth the cases and other authorities relied upon in support of the motion.").

arguing that the complaint's sole federal claim, alleging a TCPA violation, is not alleged against them. Borchert Mem. of Law 10-11. Similarly, the Akerman defendants assert that "[t]he Court lacks subject matter jurisdiction as to the claims against" them. Akerman Mem. of Law 7. The Akerman defendants also urge the Court to decline to exercise supplemental jurisdiction over plaintiff's state law claims because they "have nothing to do with the TCPA."[10] Id. Defendants' arguments blur the line between lack of subject matter jurisdiction and failure to state a claim. As explained more fully below, this Court has subject matter jurisdiction over plaintiff's TCPA claim.

Federal courts possess only limited subject matter jurisdiction and may only entertain cases as authorized by both Article III of the Constitution and federal law. United States v. Assa Co. Ltd., 934 F.3d 185, 188 (2d Cir. 2019) (citing Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 552 (2005)). "Subject matter jurisdiction can never be waived or forfeited." Gonzalez v. Thaler, 565 U.S. 134, 141 (2012). In the absence of subject matter jurisdiction, federal courts lack the power to adjudicate a claim. See id. (quoting Kontrick v. Ryan, 540 U.S. 443, 454-55 (2004)). "Courts must be careful, however, not to 'conflate' a requirement going to the merits of a claim with a threshold requirement for the Court to assert jurisdiction over that claim." Goldman v. Sol Goldman Invs., LLC, No. 20-CV-6727(AJN), 2021 WL 4198253, at *2 (S.D.N.Y. Sept. 14, 2021) (citing Arbaugh v. Y&H Corp., 546 U.S. 500, 511 (2006)).

Title 28, Section 1331 of the United States Code defines federal question jurisdiction, and provides "district courts . . . have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." See also Town of Southold v. Go Green Sanitation, Inc., 949 F. Supp. 2d 365, 370 (E.D.N.Y. 2013). Title 28, Section 1332 defines

---

[10] The Akerman defendants do not address plaintiff's purported New York TCPA claim.

diversity jurisdiction which requires that plaintiffs and defendants be "citizens of different States" and that the amount in controversy exceed $75,000. [11] 28 U.S.C. § 1332. In general, when a complaint "colorably pleads" a federal cause of action, the district court may properly exercise federal question subject matter jurisdiction. Id. (alterations omitted) (quoting Da Silva v. Kinsho Int'l Corp., 229 F.3d 358, 363 (2d Cir. 2000)).

When subject matter jurisdiction is challenged, it is plaintiff's burden to prove that jurisdiction is proper. Wiwa v. Royal Dutch Petrol. Co., 626 F. Supp. 2d 377, 382 (S.D.N.Y. 2009) (citing Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)). However, the Court liberally construes the filings of a *pro se* litigant "to raise the strongest arguments they suggest." Santana v. U.S. Dept. of Agriculture, No. 11-CV-5033 (ENV)(RLM), 2012 WL 2930223, at *1 (E.D.N.Y. July 18, 2012) (citing Erickson v. Pardus, 551 U.S. 89, 94 (2007)). Further, the Court "may refer to evidence outside the pleadings" to resolve the issue of jurisdiction. Makarova, 201 F.3d at 113 (citing Kamen v. Am. Tel. & Tel. Co., 791 F.2d 1006, 1011 (2d Cir. 1986)).

The District Court has subject matter jurisdiction to adjudicate plaintiff's federal TCPA claims. See Mims v. Arrow Fin. Servs., LLC, 565 U.S. 368, 372 (2012). In Mims v. Arrow Financial Services, LLC, the Supreme Court directly addressed the authority of the federal courts to entertain TCPA suits brought by private citizens. Id. The Court, resolving a Circuit split, held "that federal and state Courts have concurrent jurisdiction over private suits arising under the TCPA." Id. at 372, 376.

The Akerman and Borchert defendants' motions assert that the Court lacks subject matter jurisdiction as plaintiff's TCPA allegations do not relate to them. The Akerman defendants

---

[11] The Borchert defendants' papers state that there is no diversity of citizenship. Borchert Mem. of Law 10 ("There is no diversity between the parties in this matter. Plaintiff Oparaji and all defendants are citizens of the State of New York.").

acknowledge that plaintiff's complaint states a "Home Retention Corp. employee…allegedly told Mr. Oparaji [that] Jordan Smith advised her Mr. Oparaji was interested in a loan refinance." Akerman Defs.' Mem. of Law 7 (citing Comp. ¶¶ 13-15, 16). The Akerman defendants then assert that "[t]his is where the TCPA allegations as to the Akerman defendants end." Id. The Borchert defendants state that "there are no claims that the Borchert Defendants contacted Plaintiff Oparaji in violation of the TCPA." Borchert Defs.' Mem. of Law 11. However, the Borchert defendants then acknowledge what they refer to as "the conclusory statement that the agents from Defendant Home Retention Corp., called at Defendant Frommer's instruction." Id. (citing Compl. ¶ 13). They proffer that because the allegations in the complaint "are insufficient as regards a purported violation of the TCPA," plaintiff's complaint fails to assert a claim arising under federal law. Id. The Court does not agree with the defendants' analysis.

A plaintiff properly invokes this Court's federal question jurisdiction when his complaint raises a "substantial federal question." Shapiro v. McManus, 577 U.S. 39, 45 (2015). However, merely citing to a federal statute or question of federal law is not enough to implicate federal question jurisdiction if a plaintiff's claim is "wholly insubstantial and frivolous." Id. (quoting Bell v. Hood, 327 U.S. 678, 682-83 (1946)). As the Supreme Court explained in Shapiro, a purported federal claim will fail to satisfy the requirements of federal question jurisdiction where it is "'essentially fictitious,' 'wholly insubstantial,' 'obviously frivolous,' and 'obviously without merit.'" Id. at 45-46 (quoting Goosby v. Osser, 409 U.S. 512, 518 (1973)). This is a low bar. Id. at 46.

"Whether a plaintiff has pled a jurisdiction-conferring claim is a wholly separate issue from whether the complaint adequately states a legally cognizable claim for relief on the merits." S. New England Tel Co. v. Global NAPs Inc., 624 F.3d 123, 132 (2d Cir. 2010) (citing Carlson

v. Principal Fin. Grp., 320 F.3d 301, 306 (2d Cir. 2003)). The Supreme Court has "long

distinguished between failing to raise a substantial federal question for jurisdictional purposes

. . . and failing to state a claim for relief on the merits." Shapiro, 577 U.S. at 45. The federal

courts are not deprived of jurisdiction simply because a plaintiff's claim fails on the merits. See

id. at 46. The question of whether a complaint fails to state a particular claim is considered a

defense. See Arbaugh, 546 U.S. at 507 (quoting Kontrick v. Ryan, 540 U.S. 443, 459 (2004)). As

the Second Circuit explained in Southern New England Tel. Co.:

> A *defense*, however valid, does not oust the district court of subject matter jurisdiction.
> This is because once the court's jurisdiction has been properly invoked in the plaintiff's
> complaint, the assertion of such a defense is relevant only to whether the plaintiff can
> make out a successful claim for relief, and not to whether the court has original
> jurisdiction over the claim itself.

624 F.3d at 132 (emphasis in original). Only after a Court resolves the question of its subject

matter jurisdiction may the Court consider whether a complaint adequately states a claim for

relief. See Carlson, 320 F.3d at 306.

Plaintiff's complaint undeniably attempts to assert a claim pursuant to the TCPA, a

federal statute, and seeks relief as to all defendants. See compl. ¶¶ 1,12, 27-29. The complaint

states that plaintiff seeks to enjoin defendants' use of "an automatic telephone dialing system"

and "artificial or prerecorded voice calls," id. ¶ 29, which are elements of the activity proscribed

by the TCPA, see 47 U.S.C. § 227(b)(1). After reviewing the complaint, and construing it in the

light most favorable to plaintiff, the Court cannot say that the federal claim presented is

"obviously frivolous." See Shapiro, 577 U.S. at 45-46; Carlson, 320 F.3d at 306-07 (citing

Nowak v. Ironworkers Local 6 Pension Fund, 81 F.3d 1182, 1190 (2d Cir. 1996) (finding that

federal question jurisdiction existed where a complaint sought relief under a federal statute and

was not "wholly insubstantial or frivolous"). Therefore, defendants' motion to dismiss plaintiff's TCPA claim for lack of subject matter jurisdiction should be denied.

## 2. Supplemental Jurisdiction

The Borchert and Akerman defendants also challenge the Court's exercise of supplemental jurisdiction over plaintiff's state law claims on the ground that said claims and the TCPA do not "derive from a common nucleus of operative facts." Borchert Defs.' Mem. of Law 11; Akerman Defs. Mem of Law 7. The defendants are correct that the Court may only exercise its supplemental jurisdiction over state law claims which "form the same case or controversy" as the claims giving rise to federal jurisdiction. See 28 U.S.C. §1367; United Mine Workers of Am. v. Gibbs, 383 U.S.C. 715, 725 (1966) ("The state and federal claims must derive from a common nucleus of operative fact."). However, both the Borchert and Akerman defendants neglect to consider plaintiff's purported assertion of a claim under New York's TCPA, which the Court interprets as a claim under General Business Law § 399-p and § 399-z. That statute, like the TCPA, regulates unwanted telemarketing calls. See generally Gen. Bus. Law §§ 399-p, 399-z. Given that the state law claims pertaining to the unwanted telephone calls relate to the same exact incidents forming the basis for the federal TCPA claims, the Court may exercise supplemental jurisdiction over that state law claim. See 28 U.S.C. § 1367 ("[T]he district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III...."); see also McCabe v. Caribbean Cruise Line, Inc., No. 13-CV-6131(JG), 2014 WL 3014874, at *3 (E.D.N.Y. July 3, 2014) (considering TCPA and N.Y. Gen Bus. Law § 399 claims together in the same case).

However, the exercise of supplemental jurisdiction over plaintiffs remaining state law claims is a different matter. Plaintiff does not explain how his receipt of unwanted telephone calls is related to his fraud claims arising out of a state court lawsuit. In any event, as discussed below, plaintiff has failed to state a claim against the Borchert and Akerman defendants under the TCPA and New York's General Business Law. The remaining state law claims only relate to the Borchert and Akerman defendants. For the reasons below, I recommend that the Court should decline to exercise supplemental jurisdiction over the remaining state law claims.[12]

**B. Failure to State a Claim**

When considering a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court must "accept[] all of the complaint's factual allegations as true and draw[] all reasonable inferences in the plaintiff's favor." Cavello Bay Reinsurance Ltd. v. Shubin Stein, 986 F.3d 161, 165 (2d Cir. 2021) (quoting Forest Park Pictures v. Universal Television Network, Inc., 683 F.3d 424, 429 (2d Cir. 2012)). The Court also considers any attachments to the complaint or documents incorporated by reference when reviewing a challenge for failure to state a claim. Green v. Dept. of Educ. of the City of New York, 16 F.4th 1070, 1077 (2d Cir. 2021) (quoting Chambers v. Time Warner Inc., 282 F.3d 147, 152 (2d Cir. 2002)). A complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "[A] formulaic recitation of the elements of a cause of action will not do." Id. (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). The Court must be able to "draw the reasonable inference that the defendant is liable for

---

[12] The Court will not expound further on the propriety of plaintiff's state law intentional misrepresentation, negligent misrepresentation, and willful misconduct claims. However, the Court would be remiss if it did not note that the claims against the Borchert and Akerman defendants all arise out of the pending state court matter. See compl. 30-45. The federal courts should abstain from addressing plaintiff's claims, which concern conduct in state court and state rules of procedure. Sprint Comme'ns, Inc. v. Jacobs, 571 U.S. 69, 73 (2013) (quoting New Orleans Public Serv., Inc. v. Council of City of New Orleans, 491 U.S. 350, 367-68 (1989) (discussing the Younger abstention doctrine and avoiding cases implicating the performance of "judicial functions" by state courts).

the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citing <u>Twombly</u>, 550 U.S. at 556)). It is insufficient for "a complaint [to] plead[] facts that are 'merely consistent with' a defendant's liability" because the stated ground for relief must be "plausible" and not just "possible." <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 557)). The Court need not accept "mere conclusory statements," or "legal conclusions couched as a factual allegation." <u>Brown v. Daikin Am. Inc.</u>, 756 F.3d 219, 225 (2d Cir. 2014) (quoting <u>Twombly</u>, 550 U.S. at 555)).

Here, construing *pro se* plaintiff's complaint liberally, the Court analyzes plaintiff's claims for relief under two provisions of the TCPA: § 227(b)(1), which places restrictions on the use of automated telephone equipment; and § 227(c)(5), which permits a private right of action for certain violations of the regulations promulgated by the Federal Communications Commission ("FCC") under the TCPA.

**1. TCPA – 47 U.S.C. § 227(b)(1)**

The TCPA "proscribes abusive telemarketing practices by, among other things, imposing restrictions on making calls with an 'automatic telephone dialing system.'" <u>Facebook, Inc. v. Duguid</u>, 141 S.Ct. 1163, 1167 (2021). In pertinent part, the language of the statute is as follows:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice… (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call….

47 U.S.C. § 227(b)(1)(A) & (B). "The term 'automatic telephone dialing system' [ATDS] means equipment which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator and to dial such numbers."[13] <u>Id.</u> § 227(a)(1). The TCPA

---

[13] The Supreme Court recently clarified that "[t]o qualify as an 'automatic telephone dialing system,' a device must have the capacity either to store a telephone number using a random or sequential generator or to produce a

also generally prohibits the initiation of "any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party." Id. § 227(b)(1)(B).

A plaintiff adequately states a claim under the TCPA when his complaint alleges that "(1) a call was placed to a cell or wireless phone; (2) by the use of any automatic dialing system [and/or leaving an artificial or prerecorded message] and (3) without prior consent of the recipient." Ford v. Bluestem Brands Inc., No. 18-CV-2695(VB), 2019 WL 1046367, at *3 (S.D.N.Y. Mar. 5, 2019) (quoting Jennings v. Cont'l Serv. Grp., Inc., 239 F. Supp. 3d 662, 665 (W.D.N.Y. 2017)); See also Snyder v. Perry, No. 14-CV-2090(CBA)(RER), 2015 WL 1262591, at *8 (E.D.N.Y. Mar. 18, 2015) (quoting Echevvaria v. Diversified Consultants, Inc., No. 13-CV-4980(LAK)(AJP), 2014 WL 929275, at *4 (S.D.N.Y. Feb. 28, 2014)). When considering claims under the TCPA, Courts in this District require a plaintiff to do more than restate the statute's language. See e.g., Abdool v. Cap. One Bank USA, No. 21-CV-4072(KAM), 2021 WL 4147191, at *4 (E.D.N.Y. Sept. 13, 2021) ("The plaintiff must do more than simply reference the statute."); Snyder, 2015 WL 1262591, at *8; Baranski v. NCO Financial Sys., Inc., No. 13-CV-6349(ILG)(JMA), 2014 WL 1155304, at *6 (E.D.N.Y. Mar. 21, 2014). A complaint cannot simply allege that an ATDS was used. Baranski, 2014 WL 1155304, at *6 (collecting cases). Rather, a complaint "must at least describe, in layman's terms, the facts about the calls or the circumstances surrounding the calls that make it plausible that they were made using an ATDS." Id. (citing Johansen v. Vivant, Inc., No. 12-C-7159, 2012 WL 6590551, at *2-3 (N.D. Ill. Dec. 18, 2012)). Similarly, if plaintiff alleges that a telephone call was prerecorded, he must provide some indicia to support that conclusion. See Herrera v. Navient Corps., No. 19-CV-

---

telephone number using a random or sequential number generator." Facebook, Inc. v. Duguid, 141 S.Ct. 1163, 1167 (2021).

6583(AMD)(VMS), 2020 WL 3960507, at *6 (E.D.N.Y. July 13, 2020) (quoting Johansen, 2012 WL 6590551, at *3) (explaining that facts demonstrating the use of a prerecorded voice include the voice's "robotic sound" or the message's "generic content").

It may be difficult for a plaintiff to sufficiently plead allegations supporting the use of an ATDS or a prerecorded voice without the benefit of discovery, however, the burden is not impossible to surmount. See id. For example, a plaintiff may sufficiently plead a defendant's use of an ATDS or prerecorded voice by: describing how an attempt to call back the number from which the offending call was placed resulted in an automated message, see Scalercio-Isenberg v. Citizens Fin. Grp., Inc., No. 18-CV-9226(JGK), 2019 WL 7187247, at *6 (S.D.N.Y. Dec 26, 2019); stating that "the calls began with silence followed by a pre-recorded voice," see Schaefer v. IC Sys. Inc., No. 17-CV-1920(FB)(SJB), 2018 WL 3094938, at *4 (E.D.N.Y. June 22, 2018) (citing Snyder, 2015 WL 1262591, at *8)); describing the need to say "hello" several times before the caller responded, see Mackey v. IDT Energy, Inc., No. 19 Misc. 29(PAE), 2019 WL 2004280, at *1 (S.D.N.Y. May 7, 2019); or describing a "brief pause" before a live voice began speaking, see Carrera v. Major Energy Servs., LLC, No. 15-3208(MAS)(LHG), 2016 WL 7183045, at *2 (D.N.J. Mar. 29, 2016).

In the instant matter, the complaint is devoid of any non-conclusory allegations supporting the assertion that an ATDS or prerecorded voice was used to facilitate the calls in question. Plaintiff states that he "received at least 20 calls from [defendant] Home Retention Corp.," but he only details his exchange with Home Retention Corp.'s representatives on two of these occasions. Compl. ¶¶ 13, 16, 25. Although plaintiff claims the calls originated from as many as seven different phone numbers, id. ¶ 21, he provides no other indicia to support the use of an ATDS or prerecorded voice. In fact, the complaint never alleges – in conclusory fashion or

otherwise – that the twenty calls in issue were made using an ATDS or prerecorded voice. The closest the complaint comes to pleading the use of an ATDS or prerecorded voice is when it states:

> Plaintiff brings this Complaint to: (1) stop Defendants' practice of placing calls using an automatic telephone dialing system ("ATDS") without their prior express written consent; (2) stop Defendant's practice of placing calls using an artificial or prerecorded voice to the cellular and landline telephones of consumers nationwide without their prior express written consent; (3) enjoin Defendants from continuing to place calls using an ATDS to consumers who did not provide their prior express written consent to receive them; and (4) obtain redress for all persons injured by its conduct.

Id. ¶ 29. This statement does not demonstrate that an ATDS or prerecorded voice was used to facilitate the calls at issue. The language of the complaint also contradicts plaintiff's consluory claim that the calls were "pre-recorded" as plaintiff describes his conversation with live representatives of defendant Home Retention Corp. See id. ¶¶ 13, 16.

Perhaps aware of his complaint's factual defects, plaintiff's opposition papers state: "that despite multiple requests to stop, Home Retention Corp[.] continued to place unsolicited autodialed calls to plaintiff;" that the "autodialed calls" began around December 21, 2020;[14] and "from April 27, 2021 plaintiff begins receiving autodialed call (sic) to his residential phone;" Pl.'s Opp'n Mem. of Law 16 (emphasis added). Plaintiff's papers describe how Jorge Sanchez, a representative from Home Retention Corp., contacted plaintiff and "continued leaving prerecorded message calls" after plaintiff asked him to stop. Pl.'s Opp'n Aff. ¶ 8 (emphasis added). The Court should not consider these statements which appear for the first time in plaintiff's opposition and are not in the pleadings. See M.E.S., Inc. v. Snell, 712 F.3d 666, 671 (2d Cir. 2013) (explaining that the court cannot consider allegations outside of the pleadings

---

[14] Plaintiff's Memorandum of Law states the calls began "around December 21, 2020" which contradicts the statement in his complaint which states that "[o]n or before December 1, 2020, Mr. Jorge Sanchez of Home Retention Corp. called plaintiff…." Compare Pl.'s Opp'n Mem. of Law 16 with Compl. ¶ 13.

when deciding a motion under Rule 12(b)(6)). Even if the Court were to consider the statements in plaintiff's opposition papers, they are "conclusory" and plaintiff's TCPA claim under 47 U.S.C. § 227(b)(1) would still fail. See Brown, 756 F.3d at 225 (quoting Twombly, 550 U.S. at 555)).

Plaintiff's complaint fails to state a claim under 47 U.S.C. § 227(b)(1) as the calls complained of were not placed through the use of an ATDS or prerecorded voice. Accordingly, the plaintiff's TCPA claim under 47 U.S.C. § 227(b)(1) should be dismissed against all of the defendants.

## 2. TCPA – 47 U.S.C. § 227(c)(5) – Do Not Call Registry Violation

The TCPA empowers the FCC to enact regulations "concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1)-(2). The TCPA also authorizes a private right of action and states that "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring an action to enjoin the violation and recover actual or statutory damages. Id. § 227(c)(5). In pertinent part, the regulations promulgated by the FCC provide:

> No person or entity shall initiate any telephone solicitation to [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government. Such do-not-call registrations must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator.

47 C.F.R. § 64.1200(c)(2). The regulations define the term "telephone solicitation" as follows:

> The initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person, but such term does not include a call or message: (i) To any person with that person's prior express invitation or permission; (ii) To any person with whom the caller

has an established business relationship; or (iii) By or on behalf of a tax-exempt nonprofit organization.

Id. . § 64.1200(f)(15).

To state a claim for a violation of the regulations governing the Do Not Call Registry a plaintiff must allege his "residential telephone number was on the national do-not-call registry." Bank v. Spark Energy, LLC, No. 19-CV-4478(PKC)(LB), 2020 WL 5752185, at *5 (E.D.N.Y. Sept. 24, 2020). In addition, at a minimum, a plaintiff must allege facts allowing an inference that: (1) the call(s) were initiated by the defendant; (2) that the calls were made on behalf of the defendant; (3) or that the defendant was connected to the calls. See Bank v. Alarm.com Holdings, Inc., 828 Fed Appx. 5, 8 (2d Cir. 2020) (summary order). At least one Court has found allegations that a defendant "placed 'multiple' calls to…[plaintiff's] residential line within a one-month period despite that number's registration on the national "Do Not Call" registry" to be sufficient. See Owens v. Starion Energy,Inc., No. 16-CV-1912(VAB), 2017 WL 2838075, at *5 (D. Conn. June 30, 2017).

Although the allegations in the complaint state a claim against the defaulting defendant, Home Retention Corp., they fail to state a claim against the Borchert or Akerman defendants. Plaintiff alleges that his "telephone number…is listed on the National Do Not Call Registry," having been placed there on June 12, 2016. Compl. ¶¶ 18-19. He further states that his number "is a residential telephone number that is not used for business purposes" and "he received at least 20 [unwanted] calls from Home Retention Corp." Id. ¶¶ 20, 24-25. Plaintiff states that the calls "were meant and designed to solicit…[him] to refinance or sell his property," id. ¶ 22, however, he only details two of the calls. About the first call, plaintiff alleges that:

> On and before December 1, 2020, Mr. Jorge Sanchez of Home Retention Corp[.] called plaintiff and told him that Robert W. Frommer directed him to call him because he is looking to sell his property located at 245-11 133 Road[,] Rosedale, New York 11422,

that is in for (sic) foreclosure. Jorge Sanchez told plaintiff that he wants to buy the property as is and pay cash within 24 hours. Plaintiff told Jorge Sanchez that he is not selling his property. That he wants to buy the property as is and pay cash within seven days. Plaintiff Jorge Sanchez (sic) that he is not interested.

Id. ¶ 13. Plaintiff describes a second call as follows:

On April 27, 2021 at about 4:21 p.m., Liomar Crespo . . . called plaintiff; Liomar Crespo told plaintiff that one Mr. Jordan Smith informed her that plaintiff is seeking to refinance his existing loan. Plaintiff told Liomar Crespo that he is not seeking for (sic) refinance. Liomar Crespo identified herself to plaintiff as a secretary with Home Retention Corp.

Id. ¶ 16. The complaint further states that plaintiff "brings this action under the TCPA alleging that Home Retention Corp[.] conspired with Robert W. Frommer of Borchert & LaSpina, P.C. and others, to send the unsolicited calls to plaintiff's residential number listed on the National Do Not Call Registry." Id. ¶ 28.

Section 227(c)(5) of the TCPA imposes liability for telephone calls made "by or on behalf of" a person." Jackson v. Caribbean Cruise Line, Inc., 88 F. Supp. 3d 129, 135 (E.D.N.Y. 2015). This language permits actions under a vicarious liability theory against persons or entities who did not directly place the solicitation call in question but requested that the call be made on their behalf. Id. at 138. (discussing violations of the TCPA under sections 227(b) and 227(c)(5)). Liability under the TCPA may be established against a defendant where a plaintiff successfully alleges an agency relationship between defendant and the party placing the call. See Bank v. Philips Elec. N. Am. Corp., No. 14-CV-5312(JG)(VMS), 2015 WL 1650926, at *3 (E.D.N.Y. Apr. 14, 2015) (citing McCabe v. Caribbean Cruise Line, Inc., No. 13-CV-6131(JG), 2014 WL 3014874, at *3 (E.D.N.Y. July 3, 2014)).

Plaintiff's allegations fail to establish any agency relationship between the Borchert and Akerman defendants and defendant Home Retention. Although plaintiff claims that Home Retention Corp.'s representatives stated that they had communicated with defendants Frommer

and Smith, such communication does not establish that the calls were placed on these defendants' behalf. The closest plaintiff comes to pleading any type of formal relationship between defendant Home Retention Corp. and the other defendants is when he states that on December 1, 2020, one caller "told him that Robert W. Frommer <u>directed</u> him to call him because he is looking to sell his property." Compl. ¶ 13. (emphasis added). However, that same caller "told plaintiff that <u>he</u> wants to buy the property." <u>Id.</u> (emphasis added). This statement demonstrates that it was Home Retention Corp., not defendant Frommer, that was soliciting plaintiff on its own behalf. Plaintiff's description of the April 27, 2021 call is even less indicative of a relationship between Home Retention Corp. and the other defendants. <u>See id.</u> ¶ 16. During that conversation, the Home Retention caller mentioned that "[defendant] Jordan Smith informed her that plaintiff is seeking to refinance his existing loan." <u>Id.</u>

Even construing these allegations in the light most favorable to plaintiff, they do not demonstrate that the call – or any subsequent calls – were made on behalf of an entity or person other than Home Retention Corp. At best, plaintiff's complaint suggests that the Borchert and Akerman defendants may have provided information to defendant Home Retention Corp., not that Home Retention Corp. was acting at their behest. Plaintiff's assertions to the contrary are conclusory and the Court need not accept them. <u>See</u> <u>McCabe</u>, 2014 WL 3014874, at *2 (citing <u>Cellco P'ship v. Plaza Resorts Inc.</u>, No. 12-CV-81238, 2013 WL 5436553, at *6 (S.D. Fla. Sept. 27, 2013)) (finding allegations that defendants acted in concert with each other to violate the TCPA to be conclusory and insufficient to state a claim).

Plaintiff alleges that defendant Home Retention Corp. conspired with "Robert W. Frommer of Borchert & LaSpina, P.C. and others" to violate the TCPA." Compl. ¶ 28. To the extent this allegation is an attempt by plaintiff to assert a conspiracy claim against the Borchert

defendants, this claim fails for the reasons discussed above. See Ho Myung Moolsan Co., Ltd. v. Manitou Mineral Water, Inc., 665 F. Supp. 2d 239, 256 (S.D.N.Y. 2009) (quoting Gladstone Bus. Loan, LLC v. Randa Corp., 09 Civ. 4255(LMM), 2009 WL 2524608, at *6 (S.D.N.Y. Aug. 17, 2009)) (explaining that a conspiracy claim cannot proceed if the underlying tort is inadequately asserted).

Accordingly, the Borchert and Akerman defendants' motions to dismiss plaintiff's complaint against them for failure to state a TCPA claim under 47 U.S.C. § 227(c)(5) should be granted.

**3. Gen. Bus. Law § 399-p and § 399-z**

Although plaintiff pleads that defendants have violated the "New York TCPA," New York's relevant consumer protections are found in General Business Law § 399-p and § 399-z.[15] The Court construes the complaint to raise the strongest possible claims, Santana, 2012 WL 2930223, at *1, and, as stated earlier, interprets plaintiff's "New York TCPA" claim as arising under the General Business Law. Defendants do not address plaintiff's state law telemarketing claims.

Section § 399-p empowers New York's Attorney General to bring an action seeking to enjoin violations of the statute and also provides a private right of action for certain violations. N.Y. GEN. BUS. LAW § 399-p(8) & (9). In substance that statute prohibits calls made using an

---

[15] Should this Report be adopted, only state law claims would remain against the Borchert and Akerman defendants. However, because at least one viable TCPA claim survives against defendant Home Retention Corp., this is not a circumstance where the Court should decline to exercise supplemental jurisdiction because only state law claims remain. See Klein & Co. Futures, Inc. v. Bd. of Trade of City of New York, 464 F.3d 255, 262 (2d Cir. 2006) (citing Kolari v. New York-Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2006) (explaining that Courts should decline to exercise supplemental jurisdiction over state law claims after all federal claims have been dismissed). Rather, the Court still possesses pendant party jurisdiction over the Borchert and Akerman defendants because the Gen. Bus. Law claim "arises from the same set of facts that give rise to an anchoring federal question claim against another party." Kirschner v. Klemons, 225 F.3d 227, 239 (2d Cir. 2000) (citing Greenblatt v. Delta Plumbing & Heating Corp., 68 F.3d 561, 576 (2d Cir. 1995)).

"automatic dialing-announcing device." <u>See</u> <u>generally</u> <u>id.</u> § 399-p. An "automatic dialing-announcing device" is "any automatic equipment which incorporates a storage capability of telephone numbers to be called and is used, working along or in conjunction with other equipment, to disseminate a prerecorded message to the telephone number called without the use of an operator." <u>Id.</u> § 399-p(1)(a).

Section 399-z provides that:

> No telemarketer or seller may make or cause to be made any unsolicited telemarketing sales call to any customer when that customer's telephone number has been on the national "do-not-call" registry, established by the federal trade commission, for a period of thirty-one days prior to the date the call is made….

Gen. Bus. Law § 399-z(5). A "telemarketing sales call" is defined as:

> A telephone call or electronic messaging text made directly or indirectly by a telemarketer or by any outbound telephone calling technology that delivers a prerecorded message to a customer or to a customer's voicemail or answering machine service, in which such telephone call or electronic messaging text is for the purpose of inducing payment or the exchange of any other consideration for any goods or service.

<u>Id.</u> § 399-z(1)(j). The statute defines "goods and services" to include "any real property." <u>Id.</u> § 399-z(1)(e).  Although Gen. Bus. Law § 399-z(5), proscribes calls made to telephone number's listed on the Do-Not-Call registry, it only authorizes enforcement action by the New York Secretary of State and does not provide a private right of action. <u>See</u> Gen. Bus. Law § 399-z(13) & (14).

As described above, plaintiff has not adequately alleged that the calls he received were prerecorded. <u>See</u> <u>supra</u> I.B.1. His complaint therefore fails to state a claim under Gen. Bus. Law § 399-p. <u>Cf.</u> <u>McCabe</u>, 2014 WL 3014874, at *3 (denying a motion to dismiss a claim under Gen. Bus. Law § 399-p when the complaint contained allegations that the calls contained "prerecorded messages" and were auto-dialed). Plaintiff has also failed to allege in non-conclusory form that the Borchert and Akerman defendants are responsible for the calls. <u>See</u> <u>supra</u> I.B.2. Further, any

claim under section 399-z must fail because that statute does not provide for a private right of action. Accordingly, plaintiff's claims against the Borchert and Akerman defendants under the General Business Law should be dismissed for failure to state a claim.

## C. Supplemental Jurisdiction Over Plaintiff's State Law Claims

Should the Court adopt this Report and dismiss plaintiff's TCPA and General Business Law claims against the Borchert and Akerman defendants, the Court should decline to exercise supplemental jurisdiction over the remaining state law claims, all of which are alleged solely against the Borchert and Akerman defendants.[16] Plaintiff alleges state law claims of intentional misrepresentation, fraud, negligent misrepresentation, and willful misconduct. Compl. ¶ 1, 34-36, 52-54, 68. The complaint also makes passing references to additional claims, including loss of consortium, severe emotional distress, and "other mental and physical injuries." Id. ¶ 74.

When "the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988) (citing Gibbs, 383 U.S. at 726-27). The Court should dismiss these state law claims without prejudice. Id.

---

[16] The complaint states "the Defendants knowingly and purposefully agreed, acting as part of a conspiracy with Retention Defendant, fraudulently using forged documents…to perform the acts complained of herein" to foreclose on plaintiff's property. Compl. ¶ 73. To the extent plaintiff seeks to assert state law fraud and related claims against defendant Home Retention Corp., plaintiff has failed to state a claim. The complaint does not contain non-conclusory factual allegations to support a fraud or related claim against defendant Home Retention Corp. See Nguyen v. Bush, No. 15-CV-641(MKB), 2015 WL 1966296, at *4 (E.D.N.Y. May 1, 2015) (dismissing a claim where plaintiff failed to connect "conclusory allegations" to any action by defendants).

## II. Plaintiff's Motion for a Default Judgment Against Defendant Home Retention Corp.

### A. Legal Standard for Default Judgment

Rule 55 of the Federal Rules of Civil Procedure establishes the two-step process for a plaintiff to obtain a default judgment. Priestly v. Headminder, Inc., 647 F.3d 497, 504 (2d Cir. 2011). First, "[w]hen a party against whom judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, after a default has been entered against a defendant and the defendant fails to appear or move to set aside the default under Rule 55(c), the Court may, on a plaintiff's motion, enter a default judgment. Fed. R. Civ. P. 55(b)(2). Upon the completion of these two steps, the Court must determine if the plaintiffs' well-pleaded complaint establishes a legitimate cause of action. See Greathouse v. JHS Sec. Inc., 784 F.3d 105, 116 n.17 (2d Cir. 2015).

In light of the Second Circuit's "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored." Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95–96 (2d Cir. 1993) (citing Traguth v. Zuck, 710 F.2d 90, 94 (2d Cir. 1983)); Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981)). "Accordingly, plaintiff is not entitled to a default judgment as a matter of right simply because a party is in default." Finkel v. Universal Elec. Corp., 970 F. Supp. 2d 108, 118 (E.D.N.Y. 2013) (citing Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (courts must "supervise default judgments with extreme care to avoid miscarriages of justice")).

On a motion for a default judgment, the Court "deems all the well-pleaded allegations in the pleadings to be admitted." Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 108 (2d Cir. 1997). Even though the pleadings are deemed admitted, the Court still

has a "responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief." Rolls-Royce PLC v. Rolls-Royce USA, Inc., 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)). Though the court must draw all reasonable inferences from the facts in plaintiffs' favor to determine defendant's liability, see Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009), it "need not credit the plaintiffs' legal conclusions." Priestly, 647 F.3d at 504.

If the unchallenged facts establish defendant's liability, the Court then determines the amount of damages due. Credit Lyonnais Secs. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999) (citing Transatlantic Marine Claims Agency, Inc., 109 F.3d at 111). In evaluating defendant's liability, the Court is limited to the four corners of the complaint. Rolls-Royce PLC, 688 F. Supp. 2d at 153. The Court is not so restricted in determining damages, which may be calculated based on documentary evidence, affidavits, or evidence presented at a hearing on damages. See Transatlantic Marine Claims Agency, Inc., 109 F.3d at 111.

### B. Plaintiff's Motion for a Default Judgment Should Be Granted in Part and Denied in Part

### 1. TCPA Claims

As described above, the Court construes the complaint as alleging violations of sections 227(b)(1) and 227(c)(5) of the TCPA. See supra I.B.1 & 2. Section 227(b)(1) prohibits calls using an ATDS or an "artificial or prerecorded voice." However, as was previously discussed, the complaint fails to provide non-conclusory allegations supporting the assertion that Home Retention Corp.'s representatives used an ATDS or an "artificial or prerecorded voice." See supra I.B.1 & 2. When describing the calls placed in December 2020 and April 2021, plaintiff describes his conversation with defendant Home Retention Corp.'s live representatives, there is

no allegation regarding a prerecorded voice or the use of ATDS. <u>See</u> compl. ¶¶ 13, 16. Plaintiff's request to stop defendants from placing phone calls which use a prerecorded voice or ATDS are insufficient to state a claim for relief. <u>See</u> <u>Herrera</u>, 2020 WL 3960507, at *7 (quoting <u>Johansen</u>, 2012 WL 6590551, at *3) (describing how a plaintiff must provide additional facts supporting the assertion that defendant employed a pre-recorded voice or an ATDS). Accordingly, plaintiff's motion for a default judgment regarding his claim under 47 U.S.C. § 227(b)(1) should be denied.

Plaintiff has sufficiently alleged defendant Home Retention Corp.'s liability under section 227(c)(5) which provides a private right of action. The private right of action may be brought when "more than one telephone call" is received "within any 12-month period…[from] the same entity in violation of the regulations prescribed" by the FCC. 47 U.S.C. § 227(c)(5). Allegations that the plaintiff's number was on the national do not call registry and that multiple offending calls were made by or on behalf of the defendant in the prescribed time period are sufficient to state a claim for violation of the FCC's Do-Not-Call Registry regulations. <u>See</u> <u>Owens</u>, 2017 WL 2838075, at *5. Plaintiff's allegations that he received 20 calls[17] from Home Retention Corp, including his description of the calls placed in December 2020 and April 2021, serve to adequately plead a violation of section 227(c)(5). Therefore, plaintiff's motion for a default judgment against defendant Home Retention Corp. under 47 U.S.C. § 227(c)(5) should be granted.

## 2. General Business Law Claims

Plaintiff's claims under New York's General Business Law fail against defendant Home Retention for the same reasons they failed against the Borchert and Akerman defendants. As

---

[17] The Court accepts the allegations in the complaint as true, not the assertion in plaintiff's opposition papers that he received 51 calls. Pl's Mem. of Law 17.

stated previously, New York's General Business Law prohibits placing calls using an "automatic dialing-announcing device," see N.Y. GEN. BUS. LAW § 399-p, and "unsolicited telemarketing sales call[s]" to numbers listed on the "national 'do-not-call'" registry, id. § 399-z(5). As described previously, see supra I.B.1, the complaint does not allege that any of the calls were placed using an automatic dialing device or contained prerecorded voice messages. Therefore, plaintiff's claims under N.Y. GEN. BUS. LAW § 399-p must fail.

Even if the Court were to find that plaintiff's complaint satisfies the elements of a claim under N.Y. GEN. BUS. LAW § 399-z, that statute does not provide for a private right of action and only permits enforcement by New York's Secretary of State. For that reason, plaintiff's motion for a default judgment under Section 399-z should be denied.

Accordingly, only plaintiff's motion for a default judgment against defendant Home Retention Corp. under 47 U.S.C. § 227(c)(5) should be granted. His motion for a default judgment on all his other claims should be denied.

## C. Damages

It is well established that a default, is "deemed to constitute a concession of all well pleaded allegations of liability," but it is "not considered an admission of damages." Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors, Inc., 699 F.3d 230, 234 (2d Cir. 2012) (internal quotation marks and citation omitted); see also Credit Lyonnais Secs. (USA), Inc., 183 F.3d at 155 ("Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true."). On a motion for a default judgment, a plaintiff has the burden to prove damages to the Court with a "reasonable certainty." Credit Lyonnais Secs. (USA), Inc, 183 F.3d at 155 (citing Transatlantic Marine Claims Agency, Inc., 109 F.3d at 111). The Court,

however, does not need to hold a hearing, as "detailed affidavits and documentary evidence" may be sufficient. Cement & Concrete Workers Dist. Council Welfare Fund, 699 F.3d at 234 (citing Action S.A. v. Marc Rich & Co., Inc., 951 F.2d 504, 508 (2d Cir. 1991)).

Section 227(c)(5) authorizes a private right of action to both enjoin violations of the regulations promulgated by the FCC and "to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater."[18] Plaintiff seeks "damages in excess of $1,000,000" for what he labels as "economic and emotional and attendant physical damage." Pl.'s Default Aff. ¶ 12. However, he does not provide any rationale, argument, or documentary evidence to support his request and so his request for "actual monetary loss" should be denied without prejudice. See Culajay v. P.M.F. Steel Corp., No. 16-CV-6597(JS)(GRB), 2018 WL 1796222, at *1 (E.D.N.Y. Mar. 20, 2018) (denying a request for damages in the default context when plaintiff failed to provide sufficient evidentiary support). The Court should also decline to award statutory damages at this juncture because plaintiff has not sufficiently articulated the number of violations attributed to defendant Home Retention Corp. Although the complaint states "[p]laintiff believes he received at least 20 calls from Home Retention Corp.," compl. ¶ 25, plaintiff fails to explain how he knew the calls were from the defendant. Unlike the Court's analysis of defendant's liability which may be based solely on the allegations in the complaint, when determining damages "[t]he burden is on the plaintiff to establish…[his] entitlement to recovery." Bravado Intern. Grp. Merch. Servs., Inc. v. Ninna, Inc., 655 F. Supp. 2d 177, 189 (E.D.N.Y. 2009) (citing Greyhound Exhibitgroup, Inc., 973 F.2d at 158)). "The Court must ensure there is a basis for the damages specified in a default judgment." Id.

---

[18] "Plaintiff believes he received at least 20 calls from Home Retention Corp." in violation of the TCPA. Compl. ¶ 25; Pl.'s Default Aff. ¶ 10(l). The Court reviewed the phone records appended to plaintiff's complaint and compared them to the phone numbers plaintiff alleges belong to Home Retention Corp. The records only document sixteen calls. See Compl. Ex. 3 (Attachment 3).

(quoting Fustok v. Conticommodity Servs., Inc., 122 F.R.D. 151, 156 (S.D.N.Y. 1988)). Accordingly, I recommend that plaintiff's request for monetary damages should be denied without prejudice. Should this Report be adopted, plaintiff should be given fourteen days to supplement his request for damages.

Although Section 227(c)(5) permits actions to enjoin future "Do-Not-Call" Registry violations, plaintiff does not appear to seek such relief. The complaint, compl. ¶ 29, and plaintiff's affirmation in support of a default judgment, Pl.'s Default Aff. ¶ 10(p), state that plaintiff seeks to enjoin defendants' use of an ATDS and their "practice of placing calls using an artificial or prerecorded voice." Plaintiff's papers make no mention of an injunction barring future "Do-Not-Call Registry" violations, the only violation established by the complaint. Therefore, the Court should deny plaintiff's request for injunctive relief.[19] Plaintiff's request for damages should be denied without prejudice and plaintiff should be allowed to supplement his request for damages within fourteen days.

## CONCLUSION

Accordingly, it is respectfully recommended that the Borchert and Akerman defendants' motions to dismiss should be granted and plaintiff's motion for a default judgment should be granted in part and denied in part. The Court should decline to exercise supplemental jurisdiction over plaintiff's non-General Business Law state law claims which should be dismissed without

---

[19] At least one Court in this district has held that although the TCPA provides a private right of action to enjoin violations, absent "a showing that there is a reasonable likelihood…[of] future violations" a request for an injunction should be denied. See Bank v. Caribbean Cruise Line, Inc., No. 12-CV-584, 2014 WL 1883586, at *2 (E.D.N.Y. May 12, 2014) rev'd on other grounds, 606 Fed. Appx. 28 (2d Cir. 2015) (summary order). That Court recognized a "disagreement regarding whether a plaintiff must show a likelihood of future violations before a court" may issue an injunction under the TCPA. Id. In declining to issue an injunction, that Court stated that the Second Circuit requires a showing of "a reasonable likelihood" of a future violation even "in the context of a statutory injunction." Id. (quoting S.E.C. v. Mgmt. Dynamics, Inc., 515 F.2d 801, 808 (2d Cir. 1975)).

prejudice. Plaintiff's request for injunctive relief should be denied and his request for damages should be denied without prejudice. If this Report is adopted, plaintiff should be given fourteen days to supplement his request for damages against Home Retention Corp.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physician's Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health & Human Servs., 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985). Plaintiff shall serve a copy of this Report on defendant Home Retention Corp. and file proof of service forthwith.

SO ORDERED.

_____/S/_____
LOIS BLOOM
United States Magistrate Judge

Dated: January 11, 2022
       Brooklyn, New York